UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE BANDY, *et al*., | ) | CASE NO. 1:08-CV-1064 |
| | ) | |
| | ) | JUDGE SOLOMON OLIVER |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **MOTION TO DISMISS OF** |
| | ) | **DEFENDANT DEUTSCHE BANK** |
| FIFTH THIRD BANK, *et al*., | ) | **TRUST COMPANY DELAWARE** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant Deutsche Bank Trust Company Delaware ("Deutsche Bank") moves this Court, under Rules 12 (b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure and for the reasons stated in the attached memorandum, to dismiss Count One of Plaintiffs' Second Amended Complaint, the only Count asserted against Defendant.

Respectfully submitted,

/s/ Thomas L. Anastos
Frances Floriano Goins (0018631)
Thomas L. Anastos (0043545)
Ulmer & Berne LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio  44113-1448
Telephone: (216) 583-7000
Facsimile:  (216) 583-7001
fgoins@ulmer.com
tanastos@ulmer.com

Attorneys for Defendant
Deutsche Bank Trust Company Delaware

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE BANDY, *et al.*, | ) | CASE NO. 1:08-CV-1064 |
| | ) | |
| | ) | JUDGE SOLOMON OLIVER |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION TO DISMISS OF** |
| FIFTH THIRD BANK, *et al.*, | ) | **DEFENDANT DEUTSCHE BANK** |
| | ) | **TRUST COMPANY DELAWARE** |
| Defendants. | ) | |
| | ) | |
| | ) | |

## I.  INTRODUCTION

Plaintiffs allege only one claim against Defendant Deutsche Bank Trust Company Delaware[1] ("Deutsche Bank") in their Second Amended Complaint ("SAC").  In Count One, Plaintiffs allege that Deutsche Bank is one of two banks that *might* have paid checks made payable by the custodian of Plaintiffs' self-directed retirement funds to an entity called International Real Estate Investment Group ("International").  Deutsche Bank, Plaintiffs allege, somehow violated Revised Code § 1304.30 (UCC 4-401) because the accounts into which the custodian's checks were negotiated allegedly had not been opened by an authorized agent of International.

This is not the first time this claim has been asserted.  The plaintiffs in *Metz v. Unizan Bank, N.A.*, Northern District of Ohio, Case No. 5:05-CV-1510, asserted this same claim based on virtually identical allegations.   Nearly two years ago, in *Metz*, Judge Nugent dismissed

---

[1]     Deutsche Bank is alleged to be the corporate successor to Bankers Trust Delaware.  (SAC ¶ 53.) While Bankers Trust is not identified as a Defendant in the Second Amended Complaint, Bankers Trust does appear as a Defendant on the docket in this case.  As the alleged corporate successor to Bankers Trust, and to the extent that Bankers Trust is a Defendant in this case, this motion is submitted on behalf of both Deutsche Bank and Bankers Trust.

the claim under UCC 4-401 as against all of the alleged Drawee Banks because it was barred by the applicable three-year statute of limitations.  For the reasons stated below, and by the other "Drawee Bank" Defendants in this case, the same is true here.

In addition, for the reasons stated below this Court lacks personal jurisdiction over Deutsche Bank because Deutsche Bank does not transact any business in Ohio, and the Second Amended Complaint should therefore be dismissed.

## II.     PLAINTIFFS' ALLEGATIONS

Plaintiffs allege that, in 1999 or 2000, an individual named James P. Carpenter sold them high-yield promissory notes allegedly fraudulently issued by International.  (SAC ¶¶ 1-6.)  Plaintiffs allege that they purchased the notes by drawing checks on accounts at their individual financial institutions—the Drawee Banks—payable to International (also referred to as "Lac Ste. Marie" or "Canadian Resorts").  (SAC ¶¶ 2, 7.)

Plaintiffs allege that, after opening unauthorized accounts for International, Lac St. Marie, and/or Canadian Resorts at various alleged Depositary Banks, Carpenter endorsed the checks and deposited them into those accounts.  According to Plaintiffs, the Depositary Banks then presented the checks for payment to the Drawee Banks, Plaintiffs' accounts were debited, and Carpenter eventually absconded with Plaintiffs' money.  (SAC ¶¶ 2-6.)  Plaintiffs allege that Carpenter's International scheme collapsed no later than 2001.  (SAC ¶ 3.)

Plaintiffs' allegations regarding Deutsche Bank are even more tenuous than those regarding the other alleged Drawee Banks.  Plaintiffs do not allege that any Plaintiff actually maintained an account at Deutsche Bank or ever drew a check payable to International on such an account.  Rather, Plaintiffs allege that their funds were "transferred" to a Carpenter salesperson, who then "transferred" the funds to a custodian of self-directed individual retirement accounts.  That entity, the custodian, is then alleged to have written checks payable to

International on behalf of certain Plaintiffs on the custodian's accounts at either Deutsche Bank or another bank.  (SAC ¶¶ 38-41.)

## III.     ARGUMENT

To be legally sufficient, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Id.* at 1964-65 (alteration in original).  The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.  *Id.* at 1965.  To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory.  *Id.* at 1969.

### A.     Just As In *Metz*, Count One Here Is Time-Barred By The Applicable Statute Of Limitations.

In Count One of the SAC—the only claim against Deutsche Bank—Plaintiffs contend that the payment of their checks made out to International, Lac St. Marie and/or Canadian Resorts was improper because the funds ultimately went to Carpenter—the individual who had opened the accounts at the Depositary Banks on behalf of International, Lac Ste. Marie, or Canadian Resorts.   On this theory, Plaintiffs allege that the checks were not paid as authorized.   (SAC ¶ 172.)   Count One is brought under Section 4-401 of the Uniform Commercial Code, codified in Ohio as Revised Code § 1304.30.

The limitations period for a claim under R.C. Chapter 1304 (Chapter 4 of the UCC) is set forth in Revised Code § 1304.09, which provides that "[a]n action to enforce an

obligation, duty, or right arising under sections 1304.01 to 1304.50 of the Revised Code shall be brought within *three years* after the cause of action *accrues*."  (Emphasis added.)

The UCC 4-401 claim asserted in *Metz*, which Judge Nugent dismissed as barred by the statute of limitations, is virtually identical to the claim here.  The plaintiffs in *Metz* alleged that James Carpenter had sold them promissory notes allegedly fraudulently issued by two entities, Lomas de la Barra Development ("Lomas") and Serengeti Diamonds USA, Inc. ("Serengeti").  Just as Plaintiffs do here, the *Metz* plaintiffs, in Count One of their Second Amended Complaint, alleged that their checks to Lomas and Serengeti were paid in violation of UCC 4-401 because Carpenter allegedly was not authorized to act on behalf of Lomas and Serengeti.  (*Metz*, Doc. No. 334.)

As this Court held in *Metz*, under Ohio law, a cause of action involving a negotiable instrument under Article 4 of the UCC accrues at the time the defendant wrongfully exercises dominion over the instrument.  *See Palmer Mfg. & Supply, Inc. v. BancOhio Nat'l Bank*, 93 Ohio App.3d 17, 22, 637 N.E.2d 386, 391 (1994) (held that based on the policies underlying the UCC that the discovery rule does not apply to a claim that a bank had improperly paid instruments forged by one of plaintiff's employees); *Brentar v. Rupert*, Cuyahoga App. No. 73903, 1998 WL 895285, at *3 (December 17, 1998) (agreed with *Palmer* and rejected use of discovery rule on a UCC conversion claim); 66 Ohio Jur. 3d Limitations and Laches § 57.  This rule furthers the commercial policies underlying the Code that strongly militate against open-ended liability on negotiable instruments.  *See Husker News Co. v. Mahaska State Bank*, 460 N.W.2d 476 at 479 (Iowa 1990) ("Strict application of the limitation period, while predictably harsh in some cases, best serves the twin goals of swift resolution of controversies and 'certainty of liability' advanced by the [Code].").

The Sixth Circuit—applying Michigan's adoption of the UCC, which is nearly identical to Ohio's version—came to the same conclusion as did the Ohio Court of Appeals in *Palmer*.  In *John Hancock Fin. Servs., Inc. v. Old Kent Bank*, 346 F.3d 727, 731 (6th Cir. 2003), John Hancock Financial Services sued Old Kent Bank to recover check proceeds converted by Old Kent and paid to one of John Hancock's agents.  The Sixth Circuit held that Hancock's claim accrued when the checks at issue were negotiated.  *Id.* at 734.  Other jurisdictions are virtually unanimous in holding that the statute of limitations begins to run on a claim under Article 4 as soon as a defendant wrongfully exercises dominion over the instrument in question. *See, e.g., Rodrigue v. Olin Employee Credit Union*, 406 F.3d 434, 447-448 (7th Cir. 2005) (the "majority perspective" is that the discovery rule does not apply to UCC conversion claims because "application of the discovery rule would be inimical to the underlying purposes of the UCC, including the goals of certainty of liability, finality, predictability, uniformity, and efficiency in commercial transactions"); *Menchini v. Grant*, 995 F.2d 1224, 1230-31 (3rd Cir. 1993) (held that discovery rule does not apply to claims involving negotiable instruments); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 624 (Tenn. 2002) (adopted the "majority view" that the discovery rule does not apply to UCC conversion actions in part because the policies underlying the UCC "militate strongly against open-ended liability on negotiable instruments"); *Hollywood v. First Nat'l Bank of Palmerton*, 859 A.2d 472, 482 (Pa. Super. Ct. 2004) (declined to apply the discovery rule to UCC 3-118(G) in conversion claim); *Kuwait Airways Corp. v. American Security Bank*, 890 F.2d 456, 461-63 (D.C. Cir. 1989) (discovery rule does not apply to check conversion claim); *Stefano v. First Union Nat'l Bank of Virginia*, 981 F.Supp. 417, 421 (E.D.Va. 1997) (discovery rule does not apply to UCC conversion claim); *Haddad's of Illinois, Inc. v. Credit Union 1 Credit Union*, 286 Ill. App.3d 1069, 222 Ill. Dec.

710, 678 N.E.2d 322, 325-25 (1997) (declined to apply the discovery rule to UCC 3-118(G) because "[s]trict application of the limitation period, while predictably harsh in some cases, best serves the twin goals of swift resolution of controversies and 'certainty of liability' advanced by the [UCC]."); *Bradley v. National City Bank of Kentucky*, 2004 WL 3017297 at *2 (Ky. App. Dec. 30, 2004).[2]

Plaintiffs allege here that their checks were paid sometime in 1999 or 2000 when they purchased their promissory notes in International. (SAC ¶ 3.) Accordingly, Plaintiffs' claim for improper payment accrued in 1999 and 2000, when the instruments allegedly were negotiated through the Depositary Banks and paid by the Drawee Banks. Thus, Plaintiffs had, at the most, until the end of 2003 to bring a claim under UCC 4-401 against the Drawee Defendants. Yet, this action was not filed until April 24, 2008, more than *seven years* after the last check could have been deposited with any of the Depositary Banks. Because Plaintiffs filed this action long after the three-year statute of limitations set forth in R.C. 1304.09 had run, Plaintiffs' claim for improper payment is time-barred.

No "discovery rule" applies to Plaintiffs' claim under UCC 4-401. *See, e.g., John Hancock*, 346 F.3d at 733-734; *Menchini v. Grant*, 995 F.2d 1224, 1230-31 (3rd Cir. 1993); *Palmer*, 93 Ohio App.3d at 22-24. As this Court held in *Metz*, the discovery rule does not apply to claims brought under the UCC, absent an express provision to the contrary in the Code itself:

---

[2]  Under Ohio law, it is appropriate to consider authorities from other jurisdictions when addressing UCC issues. One stated purpose of the UCC is "[t]o make uniform the law among the various jurisdictions." R.C. 1301.02(B)(3) (UCC 1-102). In keeping with this purpose, according to the Ohio Supreme Court, "it is desirable to conform our interpretations of the Uniform Commercial Code to those of our sister states." *Edward A. Kemmler Mem'l Found. v. 691/733 East Dublin-Granville Road Co.*, 62 Ohio St.3d 494, 499 (1992). *See also Commonwealth v. Nat'l Bank & Trust Co. of Central Pennsylvania*, 364 A.2d 1331, 1335 (Pa. 1976) (decisions of sister states "are entitled to even greater deference where consistency and uniformity of application are essential elements of a comprehensive statutory scheme like that contemplated by the Uniform Commercial Code").

None these cases in which the discovery rule was applied involved commercial transactions.  The harm to the Plaintiffs in this case is commercially based and purely financial.  Further, whether or not the Plaintiffs were aware of the loss, the damage or harm they allege occurred at the time the Defendants committed the alleged wrongful acts.  The Plaintiffs would have lost access to their funds when checks were improperly deposited into someone else's account, whether or not Plaintiffs were notified of the loss at the time.  Plaintiffs have cited no Ohio cases where, the absence of fraud, the discovery rule has been judicially adopted to extend the statute of limitations for a purely financial injury under the UCC.

The balance of interests and equities in those cases where the Ohio Supreme Court has applied a discovery rule weighs more in favor of the individuals than it does in a purely commercial transaction governed by the UCC.  The UCC was enacted to advance the uniformity of commercial transactions and to provide finality and predictability in the trade and transfer of commercial paper and other negotiable instruments in order to encourage commercial transactions.

(*Metz*, February 28, 2006 Amended Memorandum Opinion and Order, Doc. No. 377, at p. 14 of 27, submitted as Exh. A.)

The General Assembly has expressed its intent by *not* putting a discovery rule into R.C. 1304.09.  In construing a statute in Ohio, "courts have an obligation to give effect to the intention of the General Assembly."  *Colbert v. Cleveland*, 99 Ohio St.3d 215, 217, 2003-Ohio-3319, at ¶ 12.  In determining that intent, "a court must first look to the language of the statute" and "give words used their usual, normal, or customary meaning."  *Id.*  It is a basic rule of statutory construction that "words in statutes should not be construed to be redundant, nor should any words be ignored."  *E. Ohio Gas Co. v. Pub. Util. Comm'n*, 39 Ohio St.3d 295, 299 (1988).

The General Assembly chose to include the discovery rule where it was necessary to do so in Articles 3 and 4 in the context of presentment and transfer warranties.  *See* R.C. 1303.56 (UCC 3-416), R.C. 1303.57 (UCC 3-417), R.C. 1304.17 (UCC 4-207), and R.C.

1304.18 (UCC 4-208).  Reading a discovery rule into R.C. 1304.09 (UCC 4-111) would create a redundancy by layering a discovery rule onto a discovery rule for claims based on presentment and transfer warranties.

That the General Assembly chose to put a discovery rule into specific UCC provisions demonstrates that the General Assembly knows how to wield the discovery rule and that it specifically intended not to put a discovery rule into the general statute of limitations applicable to UCC Article 4.  *Rosette v. Countywide Home Loans, Inc.*, 105 Ohio St.3d 296, 299 (2005) (the failure of the General Assembly to include a term in a statute that it had included in other statutes demonstrated that it did not intend to create a cause of action); *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 181 (1989) (legislature's inclusion of discovery rule for certain torts under R.C. 2305.06 "implies the exclusion of other torts arising under the statute").

In Ohio, "[i]f a review of the statute conveys a meaning that is clear, unequivocal, and definite, the court need look no further."  *State, ex rel. Plain Dealer Publ'g Co. v. Cleveland*, 106 Ohio St.3d 70, 76, 2005-Ohio-3807, at ¶ 35.  That is the case here.  There could be no plainer expression of the General Assembly's intent not to include a discovery rule in R.C. 1304.09 (UCC 4-111), and Count One is therefore barred by the statute of limitations.

**B.     This Court Lacks Personal Jurisdiction Over Deutsche Bank.**

"A valid assertion of personal jurisdiction must satisfy both the state long-arm statute, and constitutional due process."  *Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994).  Here, Plaintiffs cannot satisfy either requirement with respect to Deutsche Bank.

Ohio Revised Code Section 2307.382 is Ohio's long-arm statute.  Only one of the nine possible bases for the assertion of personal jurisdiction enumerated in the statute, that of "[t]ransacting any business in this state," is potentially applicable here, because a claim that a

check that was not properly payable was paid in violation of UCC 4-401 is in essence a claim for

breach of contract.  *See, e.g.*, *Ed Stinn Chevrolet, Inc. v. Nat'l City Bank*, 28 Ohio St. 3d 221, 226

(1986) ("the UCC governs the contractual relationship between a bank and its customer");

*Cincinnati Ins. Co. v. First Nat'l Bank of Akron*, 63 Ohio St. 2d 220, 223-224 (1980)

(relationship between a bank and its customer is a contractual relationship).  Deutsche Bank,

however, does not conduct any business in Ohio.  (Reznick Affidavit, submitted as Exh. B.)

Moreover, the exercise of personal jurisdiction over Deutsche Bank would not

satisfy constitutional due process.  The reach of Ohio's long-arm statute "extends to the

constitutional limits of the Due Process Clause."  *American Greetings Corp. v. Cohn*, 839 F.2d

1164, 1167 (6th Cir. 1988).  To satisfy the requirements of due process, three criteria must be

met before a court may exercise personal jurisdiction over a nonresident that does not transact

business in Ohio:

> First, the defendant must purposefully avail himself of the
> privilege of acting in the forum state or causing a consequence in
> the forum state.  Second, the cause of action must arise from the
> defendant's activities there.  Finally, the acts of the defendant or
> the consequences caused by the defendant must have a substantial
> enough connection with the forum state to make the exercise of
> personal jurisdiction over the defendant reasonable.

*American Greetings*, 839 F.2d at 1166 (quoting *Southern Machine Co. v. Mohasco Indus., Inc.*,

401 F.2d 374, 381 (6th Cir. 1968)).

It is beyond dispute that as a nonresident which does not conduct business in

Ohio, Deutsche Bank has not purposefully availed itself of the privilege of acting in Ohio, and

Plaintiffs' cause of action against Deutsche Bank could not have arisen in Ohio.  Accordingly,

Deutsche Bank's contacts with Ohio are not sufficient to satisfy the criteria necessary under the

Due Process Clause for personal jurisdiction over a nonresident defendant.

**IV.  CONCLUSION**

        For all of the reasons stated above, Count One of the Second Amended Complaint, the only Count asserted against Defendant Deutsche Bank Trust Company Delaware, should be dismissed.

        Respectfully submitted,


        /s/ Thomas L. Anastos
        Frances Floriano Goins (0018631)
        Thomas L. Anastos (0043545)
        ULMER & BERNE LLP
        Skylight Office Tower
        1660 West 2nd Street, Suite 1100
        Cleveland, Ohio  44113-1448
        Telephone: (216) 583-7000
        Facsimile:  (216) 583-7001
        fgoins@ulmer.com
        tanastos@ulmer.com

        Attorneys for Defendant
        Deutsche Bank Trust Company Delaware

## CERTIFICATE OF SERVICE

I certify that on March 9, 2009, a copy of the Motion to Dismiss of Defendant Deutsche Bank Trust Company Delaware was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Thomas L. Anastos
Attorneys for Defendant
Deutsche Bank Trust Company Delaware

1755342v1
35103.00002

- 11 -