UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


BRUCE BANDY, *et al.*,                    )        Case No.: 1:08 CV 1064
                                          )
        Plaintiffs                        )
                                          )
        v.                                )        JUDGE SOLOMON OLIVER, JR.
                                          )
FIFTH THIRD BANK, *et al.*,               )
                                          )
        Defendants                        )        <u>ORDER</u>


On May 25, 2008, Plaintiffs Bruce Bandy, *et al.*[1] (collectively , "Plaintiffs") filed the above-

captioned proposed class action suit against various banks for claims arising out of a Ponzi scheme

orchestrated by James P. Carpenter III ("Carpenter").  (Compl., ECF No. 1; Second Am. Compl.

("SAC") at ¶ 1, ECF No. 69.)  Plaintiffs are victims of Carpenter's scheme, who he defrauded by

selling them investments in a company "that performed no substantial economic activity . . . called

---

[1]     The Second Amended Complaint (ECF No. 69) names the following Plaintiffs:
        Bruce Bandy, Barbara Anthony, Lisa Ashby, Jerald Baker, Ruthella Barr, Allan
        and Della Boyle, Nadine Breisch, Rita Brodnik, Stanley Brodnik, Loretta Bunsey,
        Kathryn Cerbin, Anthony Champa, Robert Coufalik, Charles Crout, John Dauer,
        John Dipre, John Dragan, Dale Duerr, Marcia Ehresmann, Kenneth Englert,
        Edward Eschman, Elain Fatica, Kevin Fitzpatrick, Jo Ann Floyd, Flora Fye, David
        Gruel, James Henley, Robert Heston, Aubrey Howard, Robert Joyce, Ira Katz,
        Thomas Krena, Nancy Leonhard, Gail Lythos, Edward Mickey, Victor Miller,
        Gertha Moore, Marilyn Myers, Robert Neubert, Clarence Ohl, Francis Pate,
        Gizella Poulos, Robert Prosen, Kathryn Rinella, Clarence Rogers, Horst Shultz,
        Patrick Smith, Mary Stenner, James Stoops, Daniel Valvoda, John Vargo, Grazina
        Varnelis, Charlie and Diane Verkamp, Leo and Raymond Verkamp, Michael R.
        Weigand, Carolyn Wesolowski, Harold West, and Wesley and Mary Jane Wilcox.

variously 'International Real Estate Investment Group, Ltd.,' 'Lac Ste. Marie,' and 'Canadian Resorts, International'" (collectively, "International"). (SAC at ¶ 1.) They allege that various banks helped and participated in Carpenter's scheme. Specifically, Plaintiffs claim that a group of "depository banks," or those banks where Carpenter maintained his accounts, helped convert, steal, and deliver Plaintiffs' checks made payable to International to Carpenter. They further maintain that a group of "drawee banks," or the personal banks of individual Plaintiffs, paid to the depository banks the checks that Plaintiffs had written to International and refused to refund the value of these checks to Plaintiffs when requested, purportedly in violation of the law.

The Second Amended Complaint names the following "drawee banks" as Defendants in this case: Bank of America Corp. ("Bank of America"); Branch Banking and Trust Co. ("Branch Banking"); Charter One Bank; Deutsche Bank Trust Company Delaware ("Deutsche Bank"); Day Air Credit Union ("Day Air"); Dollar Bank Federal Savings Bank ("Dollar Bank"); Fifth Third Bank ("Fifth Third"); First Merit Corporation ("First Merit")[2]; Huntington National Bank ("Huntington") (for itself, and as the corporate successor to Bank First National of Zanesville, First National Bank of Zanesville, Unizan Bank, Metropolitan Bank, and the Second National Bank of Warren, Ohio); J.P. Morgan Chase Bank, N.A. ("Chase Bank"); Keybank, N.A. ("Keybank"); Manufacturers and Traders Trust Company ("M&T Bank"); National City Bank; Old National Bank (for itself and as successor to Dubois County Bank and Security Bank and Trust Company); Sunflower Bank; Town & Country Bank and Trust Company ("Town & Country Bank") (as the corporate successor to

---

[2]      Plaintiffs improperly name First Merit as First Merit Corporation in the caption of the case in the Second Amended Complaint yet refers to it as Firstmerit Bank N.A. in paragraph 56 of the Second Amended Complaint. These are two separate entities, and for the purpose of this Order the court will presume that they meant First Merit Corporation, as that was the entity that was served.

Farmers Bank & Trust Co.); Wright-Patt Credit Union; First National Bank (Orrville, Ohio branch); UMB Bank, N.A.; and United Western Bank (collectively, "Drawee Bank Defendants").

The "depositary banks" named as Defendants in the case are as follows: U.S. Bank National Association ("U.S. Bank"); Fifth Third; and Park National Bank ("PNB") (as corporate successor to Century National Bank) (collectively, "Depositary Bank Defendants"). Fifth Third is named as both a drawee and depositary bank. The court refers to all banks collectively as "Defendants."[3]

Previously, all Defendants except Defendant First National Bank ("FNB") each separately filed Motions to Dismiss Plaintiffs' Second Amended Complaint (ECF Nos. 70, 74, 77, 78, 80, 82, 83, 85, 90, 93, 96, 97, 98, 99, 100, 108, 111, 117), which were all granted. Currently pending before the court are Defendant FNB's Second Amended Request for Judgment on the Pleadings or in the Alternative, Motion to Dismiss (ECF No. 180), Motion to Dismiss (ECF No. 175) and Amended Motion for Judgment on the Pleadings (ECF No. 176), Plaintiffs' Motion to Strike and Motion for Default Judgment (ECF No. 179), and Plaintiffs' Motion for A Ruling (ECF No. 181).

## I.  FACTS AND PROCEDURAL HISTORY

The following facts substantially derive from Plaintiffs' Second Amended Complaint, and are nearly identical to those in *Blair v. J.P. Morgan Chase Bank N.A.* (1:08 CV 971), which was before this court, and for which the court issued an Order regarding the similar Motions to Dismiss filed by defendant banks in that case.

### A.  Carpenter's Ponzi Scheme

In 1991, Carpenter pled guilty and was sentenced to jail for aggravated theft as well as bank fraud.  (SAC at ¶ 116.)  He was also disbarred from practicing law in the State of Ohio for misappropriating client funds.  (SAC at ¶ 115.)  Approximately seven years later, between 1998 and

---

[3]     Plaintiffs voluntarily dismissed the following Defendants: Edward Jones; United Mine Workers of America Health and Retirement Funds; AG Edwards; and Indianapolis Life Insurance Co. (Jan. 15, 2009 Order, ECF No. 69.)

2000, Carpenter created a Ponzi scheme, whereby he sold investments in four fraudulently-created or non-existent companies.  (SAC at ¶ 119.)  He induced Plaintiffs in the instant case to purchase worthless debentures in a company called "International."   (SAC at ¶ 121.)  Carpenter, through "*alter ego* corporations and his dupe salespeople," convinced Plaintiffs to make this investment by promising that they would receive a guaranteed return of 10.625% interest per annum.  (SAC at ¶¶ 3-4.)  He further represented that these notes were guaranteed by a company entitled "Global Insurance Company" or "Guaranty & Reserves, Inc." (SAC at ¶ 4.)

To uphold the appearance of a legitimate company, Carpenter, in addition to hiring and paying salespeople, also made interest payments and paid partial redemptions to those "investors" who requested it. (SAC at ¶ 6.)  International, while a registered Ohio corporation, "did not perform any substantial economic activity from 1999 through 2001 except to execute and conceal Carpenter's fraud." (SAC at ¶ 5.)  Carpenter stole nearly all of the money purportedly invested in this company. (SAC at ¶ 125.)

### B.  Purported Participation by Banks

Plaintiffs admit that they wrote checks payable to International, many of which were "equal to or greater than $10,000." (SAC at ¶ 2.)  They maintain, however, that:

> None of these checks would have benefited [sic] Carpenter any, or harmed the Plaintiffs at all, unless Carpenter could find a bank or banks willing to let him open a corporate checking account in the name of a corporation that either had no legal existence in Ohio or for which he did not produce proper corporate banking authorization.

(*Id.*)  They state, with regard to these Depositary Bank Defendants, that Carpenter could only carry out this Ponzi scheme if he had bank accounts titled to International that he had 100% control over. (SAC at ¶ 123.)  Furthermore, they allege in the Second Amended Complaint that these banks have a duty to protect against Ponzi artists, and also have internal security measures designed to prevent this type of activity, with which Defendants failed to comply.  (SAC at ¶ 2.)

- 4 -

With regard to Drawee Bank Defendants, Plaintiffs maintain as follows:

> [E]ach time Carpenter got a depository bank to convert and or wrongfully negotiate one of these checks, the drawee bank for that check, upon transfer and presentment of the converted check by the depositary bank, would wrongfully pay the depositary bank the value of that check, without authorization and it would then wrongfully debit the checking account of the Plaintiff that had written that check the amount the check was made out for.

(SAC at ¶ 7.)  In short, they allege that Drawee Bank Defendants improperly honored the checks that they had written to International by paying out of their respective accounts the amount of the checks that were paid "over forged or unauthorized endorsements and to parties unauthorized to receive such payments." (*Id.*)

### C.  The Instant Suit

In Plaintiffs' Second Amended Complaint, they assert nine counts against Defendants. However, Plaintiffs only assert one count, Count I, against Defendant FNB.  Plaintiffs allege that FNB violated Ohio Rev. Code § 1304.30 (UCC 4-401) by honoring checks that were not properly payable. Defendant FNB argues that the court should dismiss the sole count against it, under the Ohio Uniform Commercial Code ("UCC"), because it is barred by the governing statute of limitations.

## II.  PLAINTIFFS' MOTION TO STRIKE AND MOTION FOR DEFAULT JUDGMENT

Plaintiffs filed a Motion to Strike and Motion for Default Judgment.  (ECF No. 179.) Plaintiffs seek to strike Defendant FNB's filings for its failure to sign its Answer (ECF No. 109), Motion to Dismiss (ECF No. 175), and Amended Motion for Judgment on the Pleadings (ECF No. 176), in violation of Rule 11(a) of the Federal Rules of Civil Procedure and Local Rule 10.1. Plaintiffs contend that the docket entries by the court, identifying the Answer and Motions as unsigned, were sufficient to timely draw FNB's attention to the filing errors.  Plaintiffs also assert

that FNB failed to include any page numbers, also in violation of Rule 11(a), and Local Rule 10.1.

If the court grants their Motion to Strike, Plaintiffs move for the entry of a Default Judgment in their

favor pursuant to Rule 55 of the Federal Rules of Civil Procedure.

Defendant FNB submitted a signed Amended Motion for Judgment on the Pleadings or in

the Alternative, Motion to Dismiss, in August of 2010, approximately two months after its previous

unsigned Motions were filed.  The court finds that the error was remedied within sufficient time, and

that Plaintiffs were not prejudiced by the delay or the mistake.  The court also finds that Plaintiffs

were not prejudiced by the lack of page numbers.  Therefore, the court denies Plaintiffs' Motion to

Strike on this basis.  The court also denies as moot Defendant's Motion to Dismiss (ECF No. 175)

and Amended Motion for Judgment on the Pleadings (ECF No. 176).

Defendant has not submitted a signed Answer in the preferred format, as of the date of this

Order.  However, one cannot say he has not signed the document within the meaning of the Rules,

FED. R. CIV. P. 11(a) or Local Rule 10.1, which require signing of the pleading.  Because the court

allows electronic filing, no true signature is required.  The preferred method is to place "s/" next to

a person's typewritten name, which indicates that this is the signature of the named attorney.  Here,

the attorney simply placed an "s/" above his typewritten name, which could be construed as

indicating that his signature was that of the person who appeared below the line.  Further, the

pleading contained the other information required by FED. R. CIV. P. 11(a), "the signer's address,

e-mail address and telephone number." This technical noncompliance with the preferred method of

signing a document in our electronic filing system, as stated on page 10 of the User's Manual for

CM/ECF, Northern District of Ohio, is not equivalent to failure to sign a pleading as required by

FED. R. CIV. P. 11(a) and Local Rule 10.1.  Therefore, the court denies Plaintiffs' Motion to Strike

- 6 -

and Motion for Default Judgment (ECF No. 179) in its entirety.

### III.  DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

#### A. Standard

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "after the pleadings are closed - but early enough not to delay trial."  The standard for evaluating a motion for judgment on the pleadings is identical to the standard a court applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001).  Under a motion to dismiss standard, the court examines the legal sufficiency of the plaintiff's claim.  *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993).  As the Sixth Circuit noted in *Association of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007), the Supreme Court has clarified the law in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), regarding what the plaintiff must plead in order to survive a Rule 12(b)(6) motion.

When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Id.*  The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  Additionally, even though a Complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true."  *Id.*  A court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v.*

*Allain*, 478 U.S. 265, 286 (1986).

The Sixth Circuit has held that a court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a Motion to Dismiss to a Motion for Summary Judgment.  Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).  However, pursuant to Federal Rule of Civil Procedure 12(d), "[i]f on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

### B.  Application

Defendant asserts that the court should dismiss Plaintiffs' Second Amended Complaint because Plaintiffs' Ohio UCC claims are time-barred.

### 1.  Statute of Limitations for Ohio UCC Claims

Plaintiffs assert the following Ohio UCC claim against Defendant: Count I, checks not properly payable under Ohio Rev. Code § 1304.30.  Defendant argues that Plaintiffs' Ohio UCC claims are time-barred under the applicable statutes of limitations.  The parties agree that Ohio Rev. Code § 1304.09 applies to Plaintiffs' claim.  Ohio Rev. Code § 1304.09 states as follows:

> An action to enforce an obligation, duty, or right arising under sections 1304.01 to 1304.40 of the Revised Code shall be brought within three years after the cause of action accrues.

The parties, however, dispute the meaning of the term "after the cause of action accrues" for the purpose of these statutes.  Defendant argues that Plaintiffs' cause of action accrued at the time the purportedly wrongful conduct was committed.  The Second Amended Complaint states that Plaintiffs wrote checks over to International, which were paid by Drawee Bank Defendants and deposited in accounts with Depository Bank Defendants, in 1999 or 2000.  (SAC at ¶ 3.)  Defendant

maintains that because Plaintiffs' causes of action accrued at the latest in 2000, Plaintiffs' claims

are barred after 2004, since their filing date of April 25, 2008 was well-beyond the statute of

limitations.[4]

Plaintiffs, however, maintain that the three-year statutes of limitation set forth in Sections

1304.09 and 1303.16(G) are supplemented by the discovery rule found in Ohio Rev. Code §

2305.09.  The pertinent portion of this provision reads as follows:

> If the action is . . . for the wrongful taking of personal property, the
> causes thereof shall not accrue until the wrongdoer is discovered; nor,
> if it is for fraud, until the fraud is discovered.

Ohio Rev. Code § 2305.09.[5]  They contend that this provision extends the date of accrual until the

---

[4]       The court notes that in its previous Order, the date used by the court was 2001 for
the latest date the cause of action accrued.  Defendant FNB uses the 2000 date as
the latest date the cause of action accrued.  However, as the filing date falls
outside both time frames, the issue of the dates is not dispositive.

[5]       Ohio Rev. Code § 2305.09 states, in its entirety:

> Except as provided for in division (C) of this section, an action for any of
> the following causes shall be brought within four years after the cause
> thereof accrued:
>
> (A) For trespassing upon real property;
>
> (B) For the recovery of personal property, or for taking or
> detaining it;
>
> (C) For relief on the ground of fraud, except when the cause of
> action is a violation of section 2913.49 of the Revised Code, in
> which case the action shall be brought within five years after the
> cause thereof accrued;
>
> (D) For an injury to the rights of the plaintiff not arising on
> contract nor enumerated in sections 1304.35, 2305.10 to 2305.12,
> and 2305.14 of the Revised Code;

- 9 -

date Plaintiffs discovered Carpenter's fraud and the banks purported wrongful conduct in paying and depositing the checks written to International.

Generally, federal courts sitting in diversity jurisdiction "apply state law in accordance with the then controlling decision of the highest state court." *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994). However, the Ohio Supreme Court has not yet reached the issue of whether the discovery rule applies to these statutes of limitations. In cases such as this, federal courts must make their determination of state law issues based on how they anticipate the court would rule. *Id*.

Plaintiffs proffer nearly identical arguments to those offered in *Blair* (1:08-CV-971, ECF No. 126-2) and that they offered in response to the previous Motions to Dismiss filed by Defendants, to support their contention that the discovery rule applies under Ohio law. The court, consistent with its prior Order and *Blair*, divides these arguments as follows: (1) pursuant to Ohio Rev. Code § 1301.03, the discovery rule supplements the Ohio UCC statutes of limitations; (2) other cases have applied the discovery rule to these claims; and (3) statutory construction supports their argument that the discovery rule applies. The court discusses each issue in turn, and rejects each of Plaintiffs' arguments again for the same reasons stated in *Blair*. In addition, the court includes a fourth section, which discusses Plaintiffs' new argument, regarding the constitutionality of the interpretation of the statute of limitations.

---

(E) For relief on the grounds of a physical or regulatory taking of real property.

If the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered.

- 10 -

(a)  Ohio Rev. Code § 1301.03

Plaintiffs argue that Ohio Rev. Code § 1301.03 dictates that the discovery rule supplements the statutes of limitations in Sections 1303.16(G) and 1304.09.  This provision states that, "[u]nless displaced by the particular provisions of [the Ohio UCC], the principals of law and equity . . . shall supplement their provisions."  Ohio Rev. Code § 1301.03.  Plaintiffs maintain that because sections 1304.09  and 1303.16(G) do not expressly define when a cause of action accrues for the purpose of determining when the statute begins to run, the court must turn to "principals of law and equity" to supplement these statutes.  They next conclude that because § 2305.09 relates to claims for "wrongful taking of property," which they contend are analogous to the Ohio UCC claims asserted against Defendant, the discovery rule contained within this provision applies.

The court, however, finds Plaintiffs' arguments not well-taken.  The court finds that the statutes of limitations in these provisions do not require supplementation.  Both of these provisions clearly state that a claim must be filed within three years of the date that the cause of action accrued.  These provisions are the undisputed statutes of limitations that apply in this case.  There is no plausible argument that the language of Ohio Rev. Code § 1301.03 requires that § 2305.09 should be construed as supplementing those sections at issue here under principles of law and equity.  Furthermore, if the legislature had intended for the discovery rule to apply to these statutes, it could have engrafted such an exception onto these provisions themselves.

In addition, Ohio courts generally define the time when the "cause of action accrues" to mean the date on which the wrongful conduct occurred.  *Harris v. Liston*, 714 N.E.2d 377, 379 (Ohio 1999) ("Generally, a cause of action accrues at the time the wrongful act is committed."); *O'Stricker v. Jim Walter Corp.*, 447 N.E.2d 727, 730 (Ohio 1983) ("In general, a cause of action exists from

- 11 -

the time the wrongful act was committed."). It is the discovery rule that merely serves as an exception in certain cases. *See Harris*, 714 N.E.2d at 379; *O'Stricker*, 447 N.E.2d at 730. A determination regarding whether the discovery rule applies where one is not expressly included by the legislature is for Ohio courts to determine. *See id.* The Ohio Supreme Court has extended the discovery rule exception in the following cases: medical malpractice, wrongful adoption, fraud or conversion, negligent credentialing of a physician, exposure to asbestos and other toxins, sexual abuse of children, and wrongful death. *See Harris*, 714 N.E.2d at 379 (citing the relevant cases applicable to these exceptions). None of these cases include the Ohio UCC provisions asserted here.

While it appears that the Ohio Supreme Court has yet to reach this issue, the following three Ohio Court of Appeals cases have applied the general rule, without the discovery exception, when applying Sections 1304.09 and 1303.16(G): *Mattlin Holdings, L.L.C. v. First City* Bank, 937 N.E.2d 1087, 1091 (Ohio Ct. App. 2010); *W. Ohio Colt Racing Ass'n v. Fast*, No. 10-08-15, 2009 Ohio App. LEXIS 1168 (Ohio Ct. App. March 23, 2009); and *Connors v. U.S. Bank*, No. 07AP-649, 2008 Ohio App. LEXIS 1568 (Ohio Ct. App. Apr. 17, 2008). In *Mattlin*, 937 N.E.2d at 1091, the court found that for a UCC conversion claim, "the statute of limitations set forth in R.C. 1303.16(G) is not tolled by a discovery rule." In *Fast*, 2009 Ohio App. LEXIS 1168, at *19, the court, in construing Ohio Rev. Code § 1303.16(G), held that cause of action under this provision accrues at the time the wrongful act was committed. The court, in *Connors*, 2008 Ohio App LEXIS 1568, at *23, also applied the three-year statute of limitations in Ohio Rev. Code §§ 1304.09 and 1303.16(G) from the date in which the wrongful conduct occurred. In addition, the Sixth Circuit has recently held that it "decline[s] to apply a discovery rule to the statute of limitations in either §§ 1304.09 or 1303.16(G) when considering the timeliness of the Plaintiffs' UCC claims." *Metz v. Unizan Bank*, Nos. 09-

- 12 -

3751, 09-3879, 09-4363, 2011 WL 3629714, at *3 (6th Cir. Aug. 19, 2011).

The court also rejects Plaintiffs' contention that Ohio Rev. Code § 2305.09 is applicable to the Ohio UCC claims asserted here, because the Ohio UCC claims are analogous to claims for "wrongful taking of property" under section 2305.09. A claim for wrongful taking of property (i.e. conversion) lies where one improperly exercises dominion over property to the exclusion of the rights of an owner, or withholds the property from the owner's possession under a claim inconsistent with the owner's rights. *Kimble Mixer Co. v. Hall*, No. 2003 AP 01 0003, 2005 Ohio App. LEXIS 762, at *30 (Ohio Ct. App. Feb 22, 2005). In Count I, Plaintiffs allege that FNB violated Ohio Rev. Code § 1304.30, contending that it honored checks that were not "properly payable." This provision does not require that the bank paid these checks "wrongfully" or "fraudulently," only that they were unauthorized checks that were paid out by the bank. Additionally, the Ohio UCC contains a specific provision regarding conversion, Ohio Rev. Code § 1303.60(A). This claim, however, is not asserted in the instant case, nor could it be asserted as drawers (or issuers) of checks are prohibited from asserting this claim. *See Fast*, 2009 Ohio App. LEXIS 1168, at *16, *18 ("[A] cause of action for conversion of a negotiable instrument is prescribed in R.C. 1303.60(A). . . . However, according [sic] the statute and case law, a drawer may not bring an action for conversion."); *see also Metz*, 2011 WL 3629714 at *2 (finding § 1303.60 "definitively bars [Plaintiffs] from bringing a claim for the wrongful taking of personal property, and as a result, the Plaintiffs cannot possibly re-characterize their claims to make use of the discovery rule in § 2305.09.")[6] Accordingly, the court

---

[6]     Plaintiffs state that "note one of the UCC Drafters' Notes for R.C. 1303.60(a) says the maker or issuer [of an instrument] can bring his claim against his drawee bank under R.C. 1304.30." (Br. Opp. at 18, ECF No. 177-1/178-1. Although ECF No. 177 was withdrawn as requested by Plaintiffs, their brief remained, becoming a part of 178-1.) Plaintiffs contend that the reference to 1304.30, in the context of

finds Plaintiffs' argument that the court should supplement the statutes of limitations with the discovery rule found in § 2305.09 not well-taken.

(b)  Applicability of Discovery Rule in Similar Cases

Plaintiffs contend that there are cases that apply the discovery rule to claims similar to those in the instant case.  They cite two cases in particular to support this proposition: (1) *Schofield v. Cleveland Trust Co.*, 78 N.E.2d 167 (Ohio 1948); and (2) *Geraldo v. First Dominion Mut. Life Ins.*, No. L-01-1210, 2002 Ohio App. LEXIS 4752 (Ohio Ct. App. Sept. 6, 2002).  Both of these cases, however, are readily distinguishable from the instant case.  *Schofield*, 78 N.E.2d at 172, involves a trustee who improperly diverted funds from the trust account in order to pay a debt he owed to a bank.  The suit alleges that the bank knew of the trustee's crime and aided his fraud in order to recoup the money owed for the debt.  *Id*.  The court held that the statute of limitations did not begin to run until the plaintiffs were aware of the fraud.  *Id.* at 171. This case, however, far pre-dates the enactment of the Ohio UCC, which became effective in 1994, and the statutes of limitation pertinent to this case. Furthermore, the claims asserted against the bank here amount to fraud, which is distinguishable from the Ohio UCC claims asserted against Defendant.

Additionally, *Geraldo*, 2002 Ohio App. LEXIS 4752, involved a suit between a payor bank and the forger's bank based on a claim of conversion.  The court applied the discovery rule in Section 2305.09 to the conversion claim, but specifically noted that the cause of action accrued before the effective date of Ohio Rev. Code 1303.16(G), which the court stated would have applied

_____

the conversion statute of 1303.60(A), demonstrates that 1304.30 is also based on a claim of conversion, and since the discovery rule covers such claims, it therefore applies to their claims as well.  However, after a thorough review of 1303.60 and its UCC comments, the court finds there is no reference anywhere to 1304.30, and therefore Plaintiffs argument must fail.

- 14 -

had it been enacted.  *Id.* at *28.  Because the court in *Geraldo* did not apply Section 1303.16(G) as it was not yet in effect at the time the cause of action arose in that case, the court's holding therein is inapplicable to the instant case.

Moreover, *Mattlin, Fast*, and *Connor*, explained in detail above, further demonstrate that Ohio courts have not applied the discovery rule to these cases.  Furthermore, as the court detailed in *Metz*, courts are reluctant to extend statutes of limitations in the context of commercial transactions because of policy reasons.  *Metz v. Unizan*, 416 F. Supp. 2d 568 (N.D. Ohio 2006).  The court stated "the UCC was enacted to advance the uniformity of commercial transactions and to provide finality and predictability in the trade and transfer of commercial paper and other negotiable instruments in order to encourage commercial transactions."  *Id.* at 577 (citing *Palmer Mfg. & Supply v. BancOhio Nat'l Bank*, 637 N.E.2d 386, 390 (Ohio 1994) ("Strict application of the limitations period, while predictably harsh in some cases, best serves the twin goals of swift resolution of controversies and 'certainty of liability' advanced by the UCC."); and *John Hancock Fin. Svcs., Inc. v. Old Ken Bank*, 346 F.3d 727, 734 (6th Cir. 2004) ("[S]trong public policy favoring finality in commercial transactions, protecting a defendant from stale claims, and requiring a plaintiff to diligently pursue his claim outweigh the prejudice to plaintiffs and militate against applying the discovery rule in the context of commercial conversion cases.") (internal quotations omitted)).

Therefore, the court rejects Plaintiffs' argument that Ohio courts apply the discovery rule in cases such as this.

### (c) Statutory Construction

Plaintiffs further maintain that the rules of statutory construction require a discovery rule

- 15 -

exception to the Ohio UCC statutes of limitations. First, they direct the court to Ohio Rev. Code § 2305.09(D), which states that "an action . . . shall be brought within four years after the cause thereof accrued (D) [f]or an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 1304.35 . . . ." Section 1304.35 (UCC 4-406) relates a customer's duty under the Ohio UCC to discover and report unauthorized signatures or alterations to a check. Plaintiffs maintain that because § 2305.09 expressly excludes § 1304.35 of the Ohio UCC, it means that it must impliedly include all other provisions of the Ohio UCC.

This argument, however, is equally unavailing. Section 1304.35 expressly states that a customer has one year to examine their bank statements and notify their bank of any checks that were altered or forged. Ohio Rev. Code § 2305.09 simply states that the four-year statute of limitations contained therein does not apply to extend the one-year limitation. It does not mention the discovery rule as it relates to Section 1304.35 or other Ohio UCC claims, nor does it state or otherwise imply that the Ohio UCC claims are subject to section 2305.09.

Second, Plaintiffs cite to the repealed statute Ohio Rev. Code § 1303.21, which specifically defined when a cause of action accrued. Plaintiffs maintain that the court should find that the legislature meant for § 2305.09 to supplement the statutes of limitations at issue given that it repealed the provision explicitly stating when a cause of action accrues. The court finds this argument not well-taken. As discussed above, the court finds § 2305.09 inapplicable to the claims at issue here. Furthermore, former § 1303.21 did not provide for a discovery rule regarding the provisions at issue. There are other indications from the legislature that it did not intend for the discovery rule to apply to these provisions. The legislature has included a discovery rule in other provisions, i.e., Ohio Rev. Code § 2305.09, and therefore, if it had intended for one to exist with

- 16 -

regard to these statutes, it would have merely placed this similar language in the statute.

The provisions involved here do not define when the cause of action accrues. One would apply the general rule absent some pertinent authority to the contrary. In order for the discovery exception to apply, the Ohio Supreme Court would need to carve out such an exception, which it has yet to do and which the court finds it is unlikely to do so based on the holdings in the Ohio appellate court cases, as well as the policy rationale that certainty in statute of limitations is preferred in commercial transactions cases. Therefore, the court rejects Plaintiffs' contention that the legislature intended that the discovery rule supplements these statutes.

### (d)  Unconstitutionality of Construction of Statutes

As their final argument, Plaintiffs make a four sentence argument that the "interpretation of R.C. 1303.16(g), 1304.09, R.C. 1301.03 and 2305.09 is unconstitutional." Plaintiffs' only citations are to a section of the Ohio Constitution regarding the right to a remedy, and a 1987 Ohio Supreme Court case discussing the unconstitutionality of a statute of limitations governing medical malpractice claims. Plaintiffs include no citation to any of the recent cases that have engaged in discussions of how Ohio courts resolve constitutional issues governing statute of limitations.

As numerous Ohio courts have already stated, "[a]ll legislative enactments enjoy a presumption of constitutionality." *See M. Williams v. Dayton Police Dept.*, No. 3:04-CV-117, 2005 WL 3132322, at *3 (S.D. Ohio Nov. 22, 2005) (citing *Sedar v. Knowlton Constr. Co.*, 551 N.E.2d 938 (Ohio 1990); *Hardy v. VerMeulen*, 512 N.E.2d 626, 629 (Ohio1987); *State v. Dorso*, 446 N.E.2d 449, 450 (Ohio 1983); *State, ex rel. Dickman v. Defenbacher*, 128 N.E.2d 59 (Ohio 1955). The *M. Williams* court further stated that "[c]ourts must apply all presumptions and germane rules of construction to uphold a challenged statute if at all possible. *Sedar*, *supra*, at 199. Only if the

- 17 -

unconstitutionality of a statute is shown beyond a reasonable doubt can the statute be declared invalid." *Id.* (citing *Bd. of Edn. v. Walter*, 390 N.E.2d 813 (Ohio 1979)). Plaintiffs have not shown that the interpretation of the statutes is unconstitutional. Plaintiffs do not even attempt to engage in the complex analysis utilized by courts when a challenge is made to the constitutionality of a statute of limitations under Ohio law. As one Ohio Court of Appeals noted, "[t]he Ohio Supreme Court has repeatedly stated that courts should avoid answering constitutional questions unless it is absolutely necessary to do so." *See State v. Ohio,* No. 04-MO-14, 2005 WL 3642690, at *2 (Ohio Ct. App. Dec. 3, 2005) (citing *State v. Talty*, 814 N.E.2d 1201, ¶ 9 (Ohio 2004); *Norandex, Inc. v. Limbach,* 630 N.E.2d 329, 331 (Ohio 1994); *In Re Boggs*, 553 N.E.2d 676, 680 (Ohio 1990); *Hall China Co. v. Public Utilities Commission*, 364 N.E.2d 852, 854 (Ohio 1977)). Thus, this court will not address Plaintiffs' constitutional arguments when Plaintiffs fail to put forth argument and discussion detailing how FNB's interpretation of the statute of limitations is unconstitutional. Accordingly, Plaintiffs' argument that the interpretation of the statutes is unconstitutional must fail.

Because the court finds that the discovery rule does not apply, the statute of limitations for Plaintiffs' Ohio UCC claims began to run when the allegedly wrongful conduct occurred (at the latest) in 2001.[7] Plaintiffs, thereafter, had until 2004 to file these claims. As Plaintiffs failed to file

---

[7]

> Even if the discovery rule applied, Plaintiffs' claims would still be time-barred. The Sixth Circuit held in *Metz* that even if the discovery rule applied, Plaintiffs had until 2003 at the latest to file their UCC claims, but waited until 2008. 2011 WL 3629714 at *4. Plaintiffs knew of wrongdoing three years before bringing claims, and the plaintiff does not need all the "relevant facts necessary to file a claim." *Id.* (internal citation omitted). Instead,
>
> > under the discovery rule, a statute of limitations begins running once plaintiffs are deemed to be on 'notice to investigate the facts and circumstances relevant to [their] claim in order to pursue [their] remedies.' Information 'sufficient to alert a reasonable person to the possibility of

the instant suit until 2008, Plaintiffs' claims are time-barred.  Therefore, Defendant FNB's Second Amended Request for Judgment on the Pleadings is granted, and the court need not address its alternative Motion to Dismiss.

### IV. CONCLUSION

For the foregoing reasons, the court grants Defendant First National Bank's Second Amended Request for Judgment on the Pleadings (ECF No. 180), grants Plaintiffs' Motion for a Ruling (ECF No. 181), and denies Plaintiffs' Motion to Strike and Motion for Default Judgment (ECF No. 179), and denies as moot Defendant's Motion to Dismiss (ECF No. 175) and Amended Motion for Judgment on the Pleadings (ECF No. 176). All claims against all the parties in the within action have now been resolved.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

September 27, 2011

_____

wrongdoing' gives rise to this duty to investigate.
*Id.* (internal citations omitted.)  The *Metz* court found that "Plaintiffs were on notice of the defendant banks' possible wrongdoing by 2001," since "[b]etween 1999 and 2001, Carpenter stopped making interest payments to the Plaintiffs from their investments in his sham companies." *Id.*  The *Metz* court held that "[a] reasonable person would have been alerted to the possibility that the drawee banks had debited the Plaintiffs' accounts with checks that were not properly payable because they were made to fraudulent companies.  Thus, under a discovery rule, the Plaintiffs would have had until 2004 to bring their UCC claims." *Id.*

- 19 -